UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| AMBRE KRISTIN FINLAYSON, ) | Civil Action No.: 4:22-cv-03998-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | ORDER |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits (DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

## I. RELEVANT BACKGROUND

### A.     Procedural History

Plaintiff filed an application for DIB in March 2019, alleging an onset date of January 24, 2019. Her claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held in January 2021, at which time Plaintiff and a vocational expert (VE) testified. The Administrative Law Judge(ALJ) issued an unfavorable decision on February 3, 2021, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 149). Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council granted in August 2021, specifically regarding new evidence of an MRI, and to give further consideration to the RFC and

opinions, and obtain supplemental evidence from a VE. (Tr. 157). The ALJ held another hearing in February 2022. The ALJ issued an unfavorable decision on March 23, 2022. (Tr. 42). Plaintiff submitted additional 2022 records from Lowcountry Orthopaedics to the Appeals Council; the evidence was not exhibited but is included in the record. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 1-3). Plaintiff filed an action in this court in November 2022. (ECF No. 1).

**B.     Plaintiff's Background**

Plaintiff was born in March 1982, and was thirty-six years old on the alleged onset date. (Tr. 105). Plaintiff has past relevant work of medical assistant, bank teller, and receptionist. (Tr. 41). Plaintiff alleges disability originally due to back injury, neck injury, injured wrists, depression, anxiety, panic disorder, IBS with diarrhea, chronic fatigue, sleep apnea, and right hip pain. (Tr. 105-106). Pertinent medical records will be discussed under the relevant issue headings.

**C.     The ALJ's Decision**

In the decision of March 2022, the ALJ made the following findings of fact and conclusions of law (Tr. 42):

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2024.

2. The claimant has not engaged in substantial gainful activity since January 24, 2019, the alleged onset date (20 CFR 404.1571, *et seq.*).

3. The claimant has the following severe impairments: degenerative disk disease of the cervical and lumbar spines, status post anterior cervical discectomy and fusion (x2) and lumbar microdiscectomy; obesity; and bursitis of the right hip (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments

        in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.     After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following additional limitations: frequently sit, stand, and walk; frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently stoop; occasionally kneel, crouch, and crawl; and must avoid concentrated exposure to hazards.

6.     The claimant is capable of performing past relevant work as a medical assistant, a bank teller, and a receptionist. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.     The claimant has not been under a disability, as defined in the Social Security Act, from January 24, 2019, through the date of this decision (20 CFR 404.1520(f)).

## II. DISCUSSION

Plaintiff argues the ALJ erred in formulating the RFC, specifically as to factual inaccuracies by the ALJ as to Plaintiff's gait and the entire record and also as to reaching/lifting/carrying. (ECF No. 19 at 17-18). Plaintiff argues the ALJ erred in the subjective symptom evaluation. (ECF No. 19 at 13-16). Plaintiff argues the ALJ erred in finding state agency nonexamining consulting opinions as persuasive. (ECF No. 19 at 19). The Commissioner argues that the ALJ's decision is supported by substantial evidence.

**A.**     **LEGAL FRAMEWORK**

    **1.**     **The Commissioner's Determination–of–Disability Process**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the

evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

**B.     ANALYSIS**

**RFC**

Plaintiff argues the ALJ erred in formulating the RFC, specifically as to factual inaccuracies by the ALJ as to Plaintiff's gait and the entire record and also as to reaching/lifting/carrying. (ECF No. 19 at 17-18).

An adjudicator is solely responsible for assessing a claimant's RFC. 20 C.F.R. § 404.1546(c). In making that assessment, he must consider the functional limitations resulting from the claimant's medically determinable impairments. Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *2. This ruling provides that: "The RFC assessment must include a narrative

discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8, *7. "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* Additionally, " 'a necessary predicate to engaging in a substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.' " *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (*quoting Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See Craig*, 76 F.3d at 595.

Light/Gait

Plaintiff points out that the ALJ stated in the RFC narrative: "claimant had an antalgic gait on <u>one</u> occasion; however, generally her gait was normal." (Tr. 38)(emphasis added). Exhibits B20F and B27F, notes from Carolina Pain, are the ALJ's evidentiary support citation for the paragraph generally. (Tr. 38). On the next page, the ALJ notes that in December 2021, Plaintiff's gait was antalgic, with the ALJ's citation for the whole paragraph of Exhibits 29F(MRI), 30F(EMG), 32F(2021 hospital records), 37F(Carolina Pain notes). (Tr. 39). Further down on the same page, the ALJ again emphasizes the "<u>one</u> incident of an antalgic gait," citing as support for the paragraph: Exhibits B4F(Spine and Orthopaedic Specialists of SC notes), B5F(RSFPP Orthopaedics notes), B6F(hospital records), B7F(April 2019 hospital records), B10F(Neurosurgery and Spine notes), B12F(Neurosurgery and Spine notes), B14F(Charleston Neurology notes), B20F(Carolina Pain notes), B27F(Carolina Pain notes), B37F(Carolina Pain notes). (Tr. 39)(emphasis added).

Plaintiff notes that the record itself belies the ALJ's factual findings. (ECF No. 19 at 17). The court's review of the record reveals eight exams of abnormal gait findings; two were outside of the alleged onset date in 2018. (Tr. 493, 688; 1035, February 2020; 1865, January 2021; 1909, August 2021; 1892, September 2021; 1883, November 2021; 1874, December 2021).

The ALJ stated three different times that there was only one abnormal gait in the record. The record does not support the ALJ's recited facts. In formulating the RFC that Plaintiff could walk for six hours a day, climb ramps/stairs six hours a day, and stoop six hours a day, it is unclear how much reliance the ALJ placed on her mistaken factual assumption of only one abnormal gait in the over 1,900 page record. There is at least some reliance by the ALJ on the statement; it is not this court's function to speculate as to the actual amount of reliance the ALJ placed on this unsupported fact statement. *See Vitek*, 438 F.2d at 1157-58. Substantial evidence does not support the ALJ's opinion as written.

Reaching/Upper Extremity

Plaintiff argues there were abnormal objectives as to the upper extremity that at the most support reaching or additional lifting/carrying limitations and at minimum required the ALJ to discuss why additional limitations were not supported. (ECF No. 19 at 17).

The ALJ noted Plaintiff's testimony that she occasionally lifted and carried her 20 pound baby but had to lie down afterwards and that walking and carrying her baby were severely difficult. (Tr. 38). The ALJ noted that in 2020 there were dermatomal deficits in the upper extremities and restricted range of motion but 5/5 strength. (Tr. 38, 1035, 1118). Upon reviewing the 2020 pain management notes cited by the ALJ, Exhibits 20F and 27F, there are multiple abnormal exams over time, not just one occasion. The ALJ noted 2021 imaging of contact with the right SI nerve root, an

EMG of chronic left L5 radicular changes, and a CT of mass effect on exiting right C7 nerve root, which led to surgery. (Tr. 39). The ALJ noted Plaintiff reported improvement in right arm pain but some continued numbness in fingers of her right hand. (Tr. 39).

The ALJ found that Plaintiff's allegation about lifting was unsupported by imaging and exam, stating the "<u>only</u>" positive findings as to the upper extremity were dermatomal deficits and restricted range of motion. (Tr. 39).

Plaintiff argues that the ALJ did not acknowledge and resolve conflicting evidence in the record. (ECF No. 19 at 17). In 2019, physical therapy noted functional limitations of washing overhead, lifting from floor, lifting overhead, and overhead tasks. Plaintiff was given a 10 pound limit "post surgical" (Tr. 1080). In 2019, Plaintiff examined in the shoulders with 4/5 strength in all categories. (Tr. 1080). The records are near illegible, but it appears in May or June 2021 Plaintiff was seen in the emergency room for a lifting injury. (Tr. 1283).

In July 2021, Plaintiff was seen by PA Weimer for right shoulder pain. Plaintiff described it as a tearing pain at level eight and had been using "ibuprofen, methocarbamaol, norco, and gabapentin without much relief." Plaintiff had mild numbness/tingling. (Tr. 1666). Rotator cuff tendonitis was suspected as a result of Plaintiff carrying her baby. (Tr. 1667). In July 2021, Plaintiff reported to her reproductive health provider that she had new pain in her shoulder making sleep and activity more difficult. (Tr. 1767). In July 2021, Plaintiff received a right shoulder x-ray, which showed "interval truncation of the distal clavicle with marked widening of the acromioclavicular joint space which has an appearance more suggestive of distal clavicular resection although traumatic/atraumatic osteolysis is also within the differential considerations in the absence of a history of prior surgery." (Tr. 1688).

In August 2021, Plaintiff was seen in the emergency room for neck pain that radiated into her fingertips. (Tr. 1493). Injury was listed as a fall at home. Plaintiff had already received Flexeril, steroids, and Norco but felt her pain was progressively getting worse. (Tr. 1493). Upon exam, Plaintiff had tenderness and restricted range of motion of right shoulder. (Tr. 1496). In September 2021, Plaintiff reported she felt like someone was slowly trying to rip her arm off and that the July injection had only lasted two days. (Tr. 1893-1894).

In January 2022, Plaintiff was seen by pain management and Plaintiff reported shoulder pain at level seven that impacted daily life as to lifting/carrying and unable to perform household chores. (Tr. 1814). Upon exam, Plaintiff had "several dermatomal deficits" in shoulder and restricted range of motion. (Tr. 1814). Plaintiff was very tender to palpation along her scapula. (Tr. 1815). Plaintiff was in mild distress.  The same exam findings are noted for visits in April, May, July, August, September, November, and December 2021. (Tr. 1823, 1832, 1840, 1874, 1883, 1892, 1909). Norco was increased to deal with increased pain of PT. (Tr. 1833).

In addition to the gait issue, this issue is also supportive of remand as the ALJ did not provide explanation or support for the lack of upper extremity limitations that included a reconciliation of abnormal objective evidence.

"An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) (quoting Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010)).  The ALJ is obligated to consider all evidence, not just that which is helpful to his decision. *Gordon v. Schweiker*, 725 F.2d 231, 235-36 (4th Cir. 1984); *Murphy v. Bowen*, 810 F.2d 433, 437 (4th Cir. 1987).  It is not the court's province to reconcile a conflict

created by the ALJ in his opinion. The ALJ has not provided the court with a meaningful opportunity to review the RFC and the RFC explanation/narrative.

Opinions

Plaintiff argues the single sentence of analysis by the ALJ as to the nonexamining agency consultants' opinions is insufficient to meet the regulatory standards. (ECF No. 19 at 19). The ALJ found the "opinions are supported by the objective evidence of record and are persuasive in all areas aside from environmental limitations which do not correspond to any of the claimant's impairments," citing only the actual opinions. (Tr. 40). This issue supplies additional support for the remand here as the ALJ did not provide the court a meaningful opportunity to review this finding by not giving the required regulatory explanation. Supportability and consistency are the most important factors for consideration, and the ALJ is required to explain how she considered the supportability and consistency factors in evaluating opinion evidence. 20 C.F.R. § 404.1520c(a), (b)(2). In *Stanley v. Kijakazi*, No. 5:20-cv-3030-RMG, 2021 WL 5768650, at *5 (D.S.C. Dec. 6, 2021), relevant to the instant case, the new regulations, which furnished no deference to any physician, were examined:

> The new regulatory standards certainly relax the standards for assessment of medical opinions, but they are not a license to uncritically accept the opinions of non-treating and non-examining physicians. Indeed, the priority given to assessing the consistency of opinions "with the evidence from other medical sources" in the new regulations is clearly designed to assure the claimant that the opinions of her treating and examining physicians will be weighed and considered and the opinions of in-house chart reviewers will not be uncritically accepted. § 416.920c(c)(2). The new regulations make much of the fact that no deference will be given to the opinions of any physicians. § 416.920c(a). This plainly includes the opinions of the Social Security Administration's in-house doctors.

*Id.*

It is unclear what evidence the ALJ here found was supportive of the nonexamining opinions in order to find them persuasive; further, the ALJ did not discuss the consistency factor at all. Substantial evidence does not support the ALJ's current analysis of the nonexamining opinions. Remand is further supported by this issue for the ALJ to fully comply withe the applicable regulations.

As discussed above, the court cannot find that the ALJ's decision is supported by substantial evidence, and remand is appropriate. Remand is appropriate where inadequacies in the ALJ's analysis frustrate meaningful review. *Mascio v. Colvin*, 780 F.3d 632, 636-37 (4th Cir. 2015). Upon remand, the ALJ should take into consideration all of Plaintiff's briefed allegations of error and support findings with citation to substantial evidence and provide logical explanation from the evidence to the ultimate conclusions, taking care to rely on accurate facts from the voluminous record. *See Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015).

## CONCLUSION

In conclusion, it may well be that substantial evidence exists to support the Commissioner's decision in the instant case. The court cannot, however, conduct a proper review based on the record presented. Accordingly, pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this opinion.

November 8, 2023  
Florence, South Carolina

s/Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge